(80 South. 604)

No. 21607.

BLACKWOOD v. NATIONAL LIFE INS. CO. OF AMERICA.

(Dec. 2, 1918. Rehearing Denied Jan. 6, 1919.)

*(Syllabus by the Court.)*

INSURANCE ⬥═665(5)—ACCIDENT INSURANCE —DEFENSE—EVIDENCE.

Only a question of fact is involved in this case. The judgment is based upon the credibility of the witnesses introduced on the trial.

O'Niell, J., dissenting.

Appeal from Thirteenth Judicial District Court, Parish of Grant; James Andrews, Judge.

Action by Dr. Eddie H. Blackwood against the National Life Insurance Company of America. Judgment for plaintiff, and he appeals, and defendant asks that judgment be amended by rejecting the demand awarded plaintiff. Affirmed.

J. B. Roberts, J. A. Williams, and C. H. McCain, all of Colfax, for appellant.

J. B. Boyer, of Chicago, Ill., and Blackman, Overton & Dawkins, of Alexandria, for appellee.

SOMMERVILLE, J. Plaintiff, a physician, alleges that the defendant company is indebted to him in the sum of $11,807.15, with in-terest, under a policy issued by it insuring him against loss from bodily injury effected through external violence and accidental means. He further alleges that on January 24, 1913, while riding from a professional call in Grant parish, at night, he sustained an injury to his left eye, which, within four weeks, resulted in the entire and irrevocable loss of sight of the eye; that defendant had agreed to pay $3,750 to petitioner in the event of such an accident, together with $57.15 for loss of time while he was disabled on account of the accident. He further asks for $500 attorney's fees; and for twice the amount of the insurance because of the refusal of defendant to pay the demand made on it, as a penalty, provided for in Act No. 310 of 1910, p. 527.

The defendant answered at length, denying that plaintiff had lost his eyesight from the accident mentioned, on January 24, 1913, and alleged that the accident resulting in the loss of plaintiff's left eye occurred December, 1, 1912. It made other defenses, including a charge of unconstitutionality of Act No. 310 of 1910.

There was judgment in favor of plaintiff for $57.15, as compensation for time during which he was disabled after the accident of January, 1913. Plaintiff appealed. Defendant asks that the judgment be amended by rejecting the demand for $57.15.

The evidence is clear that plaintiff met with two accidents to his left eye; the first one on December 1, 1912, while hunting with his friend McKnight, when he was wounded in the left eye with a small bird shot fired by McKnight; and the second one, on January 24, 1913, while riding a horse which stumbled and threw him, when a projecting thorn or twig struck him in the left eye. There was no witness to this accident, but plaintiff testified positively that it happened.

The decision of the court will rest upon whether the testimony of the plaintiff is to be accepted, or that of Dr. Feingold, his phy-

sician, who was called as a witness by defendant. The case must be decided upon the preponderance and value of the evidence found in the record, and upon the credibility of the witnesses. The testimony of plaintiff and of Dr. Feingold is absolutely contradictory. One cannot be reconciled with the other. One must be accepted, and the other rejected. The district judge rejected the testimony of plaintiff, and rendered judgment for defendant on the main demand.

Plaintiff admitted, while on the witness stand, that his left eye had been wounded with a bird shot on December 1, 1912; that he engaged the services of Dr. Feingold, an eye specialist, and he came to New Orleans for treatment; that Dr. Feingold treated him at Touro Infirmary for several days, when he was discharged. He testified that the bird shot had almost spent its force when his eye was struck with it, and that it had not penetrated the eyeball. He further testified that Dr. Feingold told him that he was all right, and that he went home and attended to his professional duties without further trouble; that his eyesight was not impaired; and that his eye was in a normal condition until he met with the second accident, January 24, 1913, after which time he lost the sight of his left eye entirely.

After the second accident, plaintiff attended to his eye himself for about four weeks, when he went to New Orleans and consulted Dr. Salter, another oculist. Dr. Salter found a wound, discoloration in the sclera, the iris torn or misplaced, or misshaped, and that there was an opacity where the crystalline lens should have been; in other words, he saw a membranous cataract. He testified that there appeared to be an injury, from some missile, or substance to the sclera. He found the eye to be undergoing general disorganization, and the sight entirely gone. He told the plaintiff of the condition of his eye, and plaintiff left for home on the same day that his eye was examined. The witness could not state when the wound to the eye might have been made, except that it was at some time previous to the day on which he examined it. He did not know that there had been more than the one accident, of January, 1913. Plaintiff did not tell him of the accident in December, 1912, or that Dr. Feingold had attended him.

Dr. Feingold, appearing as a witness for the defendant, states very positively that the sight of plaintiff's left eye was very much impaired and was dying out when he saw him December 3, 1912, the second day after the accident, at Touro Infirmary, in New Orleans; and that he so informed plaintiff. He said that there was a perforating wound in the sclera, or the white of the eye, or outer coat, of the eyeball, on the side nearer the left temple; that plaintiff first told him that the wound was caused by a twig or thorn while he was riding, and, afterwards, that it was caused by a bird shot while he was out hunting; that plaintiff showed him a similar shot which was lodged in the tip of the left ear; that the wound in the eye had closed for all practical purposes when he left the infirmary, that is, that there was no more danger of infection to the eye; that the vision of plaintiff improved while in the hospital; that the perforation of the sclera was most serious; that there was no probability that plaintiff would recover his normal eyesight permanently; and that there would be no functional improvement of the eye. The witness further testified:

"The diagnosis of the condition for which I treated the doctor from December 3d to 8th was a perforating wound with hemorrhage in the vitreous chamber, hemorrhage inside of the eye."

Dr. Blackwood, testifying, said that he had met with a second accident on January 24, 1913, to his left eye; that it was due to a thorn or brushwood which had gone into his eye while he was riding. It was the same

nature of accident that he had first told Dr. Feingold had happened to him on December 1, 1912. He said that the sight was perfect until he met with the accident on January 24, 1913, when he lost the sight because of that last accident.

Dr. Feingold testified positively that the loss of sight of the eye was due entirely to the accident which befell it on December 1, 1912.

Both parties are men of reputation and standing in the medical fraternity in their respective places of residence. If the accident in January was the cause of the loss of the sight of the eye, the plaintiff is entitled to recover from defendant; if the accident of December 1, 1912, was the cause of the loss of the sight of the eye, the plaintiff is not entitled to recover—for he only sued defendant for the loss of sight and loss of time resulting from the accident of January 24, 1913.

Plaintiff did not offer any expert evidence on the trial of the cause; he did not have a specialist, or medical man, to examine his eye for about one month after the second accident; and he did not call that expert as a witness; that oculist was examined on behalf of defendant. He could not say whether there had been one or more than one accident to the eye. He said the sight was gone from the eye, but he could not say whether it had been lost a month or for a longer time than that before he made his examination.

Plaintiff called witnesses to prove that, from all appearances, the left eye was all right after the first accident in December; but they were inexperienced and casual observers, who could not testify positively whether there was sight in the eye or not, or whether the sight was fast disappearing before the time of the second accident. The testimony of those inexperienced witnesses is of little value; it does not sufficiently corroborate the testimony of plaintiff to the

effect that his eyesight was perfect up to the time of the accident in January, 1913.

Dr. Feingold saw plaintiff occasionally until about Christmas week, 1912, and he says the eye was then shrinking and showing impairment. Plaintiff says that he was shot in the eye on December 1st. His friend, McKnight, shot the gun, and saw the hole in plaintiff's eye and blood flowing therefrom. Plaintiff phoned to Dr. Feingold, December 2d, and he took a train that night for New Orleans, and met Dr. Feingold on the morning of December 3d. Dr. Feingold saw the wound in the eye, and diagnosed the case as a serious one. He kept plaintiff in the hospital until time for infection had passed. The gunshot was small, and its force nearly spent; but it certainly entered plaintiff's eye, and the sight of the eye was destroyed gradually thereby.

Dr. Feingold's opinion on this point is of more value than that of the casual observer; for he is an expert in his line, and he was selected by plaintiff to examine and treat his eye at the time of the first accident. He is an entirely disinterested witness, not in the employ of any insurance company, and will not be presumed to have sworn falsely.

The testimony of Dr. Feingold is full, complete, and unreserved. He went into the details of the case, and testified clearly and unequivocally. He must be believed.

The testimony of Dr. Feingold is attacked by plaintiff in several particulars. The first is that the records of his (plaintiff's) case at Touro did not originally show that the doctor found that his eye had been injured by a gunshot wound. And the record did not, originally, show that statement. But the fact, as testified to by the plaintiff, is that the wound was the result of a gunshot; and the only reason for the entry not having been made at the time is because, we suppose, plaintiff did not tell Dr. Feingold about the gunshot wound at first, but told him that the wound was due to a thorn or piece of

brushwood which penetrated the eye. Afterwards, the doctor said plaintiff told him that the wound was due to a bird shot, and he subsequently had the record corrected so as to show that fact. He does not appear to have had any reason or object for adding to the record, except for the purpose of keeping it straight. The addition was true, and it had no effect upon plaintiff's claim before the court.

The evidence of the doctor is next attacked because of his statement that plaintiff told him of a bird shot in the lobe of his left ear, and that he (the doctor) felt it there at the time of his examination. Plaintiff's ear was examined in court during the trial of the case, and the physician who examined it said that there was no appearance of a gunshot wound there. This was in 1915, nearly three years after the wound was inflicted. Besides, the shot was a very small one, being a No. 7½ chilled shot, the force of which had been nearly spent by the time it reached plaintiff, and the perforation must have made a very slight wound. The shot remained lodged in the ear for a short time, and its appearance might have been entirely dissipated in the course of two or three years. One might expect to find two or more shots from a shotgun in or near the place where one shot had struck. And a puncture of the lobe of the ear is a very different wound, in its results, from the puncture of the eye by a shot, the force of which was almost spent.

The next attack is on that portion of the doctor's testimony wherein he denied having filled out reports numbered 1 and 2 in the record, and which plaintiff had given, or sent, to him to be filled out. In this, the doctor was in error, for he had filled out report numbered 1, in his own handwriting, and he filled that portion of report numbered 2 showing that he had no knowledge of the second accident to plaintiff's eye. The witness evidently forgot that he had filled out these reports. He said, in explanation, that plaintiff had asked him to postdate report No. 1, so that he might collect insurance which he had on a policy; that he had, by mistake, failed to put in his claim in time for the accident of December 1, 1912; and that he (the witness) refused to do as requested; that he told the plaintiff to fill in, with pencil, the blanks in the reports, and he would see whether he could sign them or not; that he again refused to sign the report as filled out in pencil by plaintiff showing the first accident to have occurred on January 24th. The doctor thought that he had persisted in that refusal, forgetting that he had signed report numbered 1, giving the correct details of the first accident, which he had attended to, at Touro Infirmary, after he had erased the writing in pencil by plaintiff. It was a similar report to the one entered by him, or caused to be entered under his instructions, at the infirmary. It did not say that the sight had been lost from the eye, because at the time that the witness was treating plaintiff the sight had not been entirely lost. The sight was diminishing at the time, and was lost subsequently thereto.

This failure to remember, on the doctor's part, that he had made out the reports after he had positively refused to make them out, does not destroy the effect of his testimony with reference to the condition of plaintiff's eye in the early part of December, immediately after the first accident to it.

Report numbered 1 is not the statement made by plaintiff in pencil. The document bears evidences of the erasure of the writing in pencil. It is in ink, and in the handwriting of Dr. Feingold. It is a correct statement, and accords with the diagnosis made by Dr. Feingold on December 3d, at the Touro Infirmary. In both reports Dr. Feingold stated that plaintiff's left eye was punctured, or perforated. A perforation of the eye, even by a nearly spent bird shot, was certainly serious. McKnight saw the wound and the blood flowing from it. Plaintiff rec-

ognized the seriousness of the condition of his eye, telephoned Dr. Feingold on Monday, the next day, for an appointment, and took the train for New Orleans that night. Dr. Feingold examined the eye the next morning. He saw the wound, or perforation, in the eyeball, where a hard object had penetrated, and that there was blood in the anterior chamber of the eye. Such a wound might well have destroyed the sight of the eye within a short time, if not at once. Dr. Feingold says that the sight was not destroyed, in his opinion, at that time, but that it would go gradually; and that he told plaintiff so.

The acts of plaintiff at the time of the first accident, which he terms a slight one, are in strong contrast to his acts at the time of the second accident, which he terms so serious as to have destroyed the sight of the eye.

After the last accident, he says that he suffered great pain, went to bed and stayed there, and did not consult a physician until about four weeks thereafter. It is unreasonable to believe that a man of plaintiff's ability and knowledge of medicine would receive a puncture of his eye, and not consult a physician for several weeks thereafter.

We are constrained to accept Dr. Feingold's testimony to the effect that plaintiff lost the sight of his left eye because of the accident which befell it on December 1, 1912, and not because of the accident of January 24, 1913, upon which plaintiff bases his demand in this case; and that there must be judgment in favor of defendant on this part of the claim.

Such must have been the conclusion of the trial judge, for he rejected the main demand of plaintiff.

Comment is further made upon Dr. Feingold's testimony, or reports, to the effect that he certified that plaintiff was "not at all disabled." It is argued that, if he (the doctor) found that the sight of plaintiff's eye was disappearing, he would not have said that plaintiff was "not at all disabled." That portion of the report had to do with the claim for compensation for the time lost on the ground of disability to work; which, in the opinion of the doctor, did not extend beyond the time that plaintiff was in the hospital, for about four days, and for the additional time that he spent in the city of New Orleans under his (the doctor's) care.

The evidence shows that the plaintiff was disabled for a few days after the second accident, for which he claimed compensation, and which the trial judge allowed him.

The judgment appealed from is affirmed.

O'NIELL, J., dissents, being of the opinion that the plaintiff should recover on his principal demand.

LECHE, J., takes no part, not having heard the argument.

(Dec. 2, 1918. Rehearing Denied Jan. 6, 1919.)

